**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ALEXANDER MILLIGAN SHARP, IV,

      Plaintiff,

vs.                                                                    CASE NO. 3:06-cv-200-J-TEM

CITY OF PALATKA, *et al.*,

      Defendants.

_____

## O R D E R

      This case is before the Court on Defendants' Motion for Partial Summary Judgment on Count II of Amended Complaint with Supportive Memorandum of Law (Doc. #67), filed October 5, 2007 by Defendants Gary S. Getchell and James Griffith.  Plaintiff filed a response in opposition to the sought relief (Doc. #71) on October 23, 2007.  The parties have each filed supplemental documents, such as affidavits and deposition testimony, in support of their respective positions (*see, e.g.*, Docs. #65, #66, #72).  As will be discussed in more detail below, Defendants' Motion for Partial Summary Judgment shall be **GRANTED**.

## STATUS

      Plaintiff initiated this action with the filing of a complaint against the City of Palatka on March 2, 2006 (Doc. #1, Complaint).  Plaintiff sought damages and injunctive relief against the City of Palatka for violations of his freedom of speech and right of association under 42 U.S.C. § 1983 and for violations of his rights under the Law Enforcement Officers' Bill of Rights contained in Section 112.532, Florida Statutes.  *Id.*  The City of Palatka moved to dismiss Plaintiff's claim asserted under Florida Statutes § 112.532 and that motion was

granted on May 16, 2006 (Doc. #7, Court Order).  Thereafter, Plaintiff moved the Court for leave to file an amended complaint to state a claim for malicious prosecution against Palatka Chief of Police, Gary S. Getchell, and Assistant Chief of Police, James Griffith, in their individual capacities (*see* Doc. #14, Motion to Amend).  The Court ultimately granted the motion to amend (Doc. #52).  Defendants Getchell and Griffith now seek summary judgment in their favor on Count II of the Amended Complaint, which alleges the state common law tort of malicious prosecution against them (Doc. #67, Defendants' Motion for Partial Summary Judgment on Count II of the Amended Complaint).[1]

## **FACTS**

Plaintiff Sharp was employed with the Palatka Police Department (PPD) from 1991 until March 13, 2004, when Plaintiff tendered his resignation under what he characterized as "extreme duress."  (Sharp Aff. [Doc. #36-2] at ¶ 31).  Plaintiff was last employed as a police officer in the capacity of sergeant, serving in the patrol, detective, administrative and other divisions.  (Doc. #53, Amended Complaint).  Pertinent to the instant motion is the general knowledge that tensions existed between Plaintiff and non-party Lynn Hoffman, dating back to early 2002.  (*See* Doc. #24, Defendant's [First] Motion for Summary Judgment, pp. 6-7; Doc. #67, Defendant's Motion for Partial Summary Judgment, pp. 1-5). These tensions took the form of complaints filed with the PPD concerning Sharp and actual litigation wherein Sharp sued Hoffman.  *Id.*; *see also*, Sharp Aff. at ¶¶ 10-18.  Furthermore, tensions were generally known also to exist between Plaintiff Sharp and Chief of Police

---

[1]Much earlier in these proceedings, Defendant City of Palatka filed its Motion for Summary Judgment (Doc. #24).  For purposes of clarity, the Court will refer to the City of Palatka's motion as the First Motion for Summary Judgment.  This Order rules only the Motion for Partial Summary Judgment filed by Defendants Getchell and Griffith (Doc. #67).

Gary S. Getchell dating back to 2001, when Getchell was appointed Chief.  (Sharp Aff. at ¶¶ 4-9).  However, the events leading up to the instant action occurred primarily between September 2003 and March 2004.  (*See generally* Sharp Dep. [Doc. # 80-6] at 25; Sharp Aff. at ¶¶ 24-30; Cheatham Aff. [Doc. #26-3]; Getchell Aff. [Doc. #26-4] at ¶¶ 18-33).

On September 15, 2003, Plaintiff Sharp received a complaint from Nancy Johnson, the girlfriend of Sharp's outside business partner Russell Kohuth.  Ms. Johnson, who reportedly owned the Palatka Forum at that point in time,[2] claimed someone was repetitively posting messages on the internet bulletin board that rendered the forum unuseable.  (Cheatham Aff., Exh. B).  Sharp had Cpl. Poole officially take the criminal complaint and forward it to Detective Cheatham for investigation.  *Id.*  Upon learning of the Johnson complaint, Assistant Chief James Griffith directed Sharp not to involve himself in the investigation.  (Second Griffith Aff. [Doc. 26-13] at ¶ 7).  However, on October 25, 2003, Sharp issued a supplemental PPD report on the Johnson complaint, in which he reported that he and his business partner Russell Kohuth were also victims of the computer crime and in which Sharp implicated Lynn Hoffman as a criminal suspect.  (*See* Cheatham Aff., Exh. B).

On October 24, 2003, Russell Kohuth and attorney John Key met with city officials and accused Lynn Hoffman of committing computer crimes against them.  (Bush Aff. [Doc. 26-2] at ¶ 9).  City Manager Allen Bush was present at the meeting.  Kohuth and Key told the officials that Hoffman was a suspect in a criminal matter under investigation by the PPD

---

[2]Plaintiff Sharp created a web site called the "Palatka Forum" sometime in January 2002.  (Sharp Aff. at ¶ 12).  Sharp stated he sold the Palatka Forum to Russell Kohuth in February 2002. (Sharp Aff. at ¶ 14; Second Griffith Aff. at ¶ 6 and Exh. C).

and the Florida Department of Law Enforcement (FDLE). *Id.* After Kohuth and Key left the meeting, Chief Getchell was called in to discuss what transpired during the Kohuth/Key meeting. *Id.* Chief Getchell asked the officials enough questions to satisfy himself that Plaintiff Sharp may have revealed confidential information about the ongoing criminal investigation by the PPD and FDLE. (Getchell Aff. at ¶ 18).

On December 19, 2003, Chief Getchell announced an opening in the PPD for the position of lieutenant. The posting for the lieutenant's position required qualified applicants to have, among other things, a college degree (*see* Doc. #50, Exh. 16). Sharp aspired to obtain the promotion to lieutenant and submitted his request and resume. (Sharp Aff. at ¶ 25). Chief Getchell stated he was "bewildered" by Plaintiff's application that was submitted on January 8, 2004, because it indicated that Plaintiff had not yet received his college degree and Chief Getchell recalled from earlier paperwork that Plaintiff had received his college degree a few years earlier. Getchell questioned Plaintiff about the discrepancy, who responded he had some additional tests to take to obtain his degree. (Getchell Aff. at ¶20). Plaintiff later submitted paperwork showing he earned his bachelor's degree in December 2003. *Id.*

Also in mid-December 2003, Plaintiff told some of his fellow officers that he was thinking about running for Sheriff of Putnam County. (Sharp Dep. at 50-51). At least three other officers were present during this conversation, however, Chief Getchell was not among them. (Sharp Dep. at 51). Plaintiff testified that his intention to run for Sheriff was "common knowledge throughout the department." (Sharp Dep. at 110-111).

Plaintiff's candidacy for Sheriff became official on January 7, 2004, when Plaintiff officially qualified to run. (Sharp Aff. ¶ 1). As to his campaign, Plaintiff believed that

consolidation of the PPD and the Putnam County Sheriff's Office would provide "one centralized law enforcement agency for the entire county." (Sharp Aff. at ¶ 1). Plaintiff considered this idea "an integral part" of his candidacy. (Sharp Aff. at ¶ 1).

On March 3, 2004, Plaintiff was informed that an internal affairs investigation (hereafter "IA 1106") had been initiated regarding his conduct and possible violations of PPD policies. (Griffith Second Aff. [Doc. 26-13] at ¶ 10 and Exh. C). IA 1106 pertained to the possibility that in October 2003 Plaintiff had revealed information to individuals outside the police department about an ongoing criminal investigation, in violation of city policy. *Id., see also* Sharp Aff. at ¶ 26. The crux of this investigation initially centered around the confidential information relayed to the city officials by Kohuth and Key about the Johnson computer crime complaint that was being actively investigated at the time of the October 24, 2003 meeting. During the course of his investigation, Assistant Chief Griffith uncovered information concerning the origin of a certain email in the Johnson case that led Griffith to believe Plaintiff Sharp may have falsified information on a police report. (Second Griffith Aff. at ¶ 13; Miller Aff. [Doc. 66-3][3]). Also during the course of inquiry into IA 1106, Griffith discovered  information that led to the commencement of two additional internal affairs investigations (hereafter "IA 1107" and "IA1108") . IA 1107 was initiated to determine whether Plaintiff had falsified documents by including inaccurate information about the status and date of his college degree. (Getchell Aff. at ¶20 and Exh's. K & P). IA 1108 was opened and centered around whether several months earlier Plaintiff had given false

---

[3]Doc. #66-3 is the affidavit of Melissa Miller, general counsel for the St. John's River Community College. Attached to the affidavit is the email correspondence verifying the site of IP address 169.139.172.2.

testimony in a deposition in a civil matter concerning Plaintiff's ownership in the Palatka Forum.[4]  (Second Griffith Aff. at ¶ 14 and Exh. I).  These three internal affairs investigations led to the charging affidavit ultimately filed with the State Attorney's Office concerning Plaintiff Sharp's possible criminal violations.  (*See generally* Willis Aff. [Doc. #66-2]; Third Griffith Aff. [Doc. #66-4]).  Prior to filing the Form 798, charging affidavit, Defendants Getchell and Griffith met with Assistant State Attorney Robin Strickler to discuss the instances wherein they (the Defendants) believed Plaintiff Alex Sharp had violated the law. (Strickler Dep. [Doc. #65-2] at 6-11; Griffith Aff. [Doc. #17-2]; Second Getchell Aff. [Doc. #66-5]).

Plaintiff claims that in retaliation for his political speech, the PPD falsely accused him of a crime by filing a complaint affidavit, falsely accused him of violations of City Police Department policies with initiation of internal investigations lacking in merit, demoted him without cause with the reassignment to the records section of the PPD on March 12, 2004, and ultimately forced him to resign.  (*See generally*, Amended Complaint).  Plaintiff also accuses Assistant Chief Griffith and Chief Getchell individually of malicious prosecution in violation of Florida common law by filing the reportedly false complaint affidavit with the State Attorney's Office.  *Id.* at ¶ 10.

Defendants Getchell and Griffith deny the allegations and seek summary judgment in their favor on Count II of the amended complaint.

---

[4]The civil matter involved the litigation initiated by Plaintiff Sharp against Lynn Hoffman.  During his May 5, 2003 deposition, Sharp reportedly stated that he no longer owned the Palatka Forum and was not involved in any way with the Palatka Forum. (Second Griffith Aff. at Exh. I).  The Court notes a copy of the referenced deposition has not been filed in the instant action.

## STANDARD OF REVIEW

Summary judgment is appropriate only when a court is satisfied "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The burden of establishing the absence of a genuine issue is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Federal Rule of Civil Procedure 56(e) states in relevant part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must----by affidavits or as otherwise provided in this rule---set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2) (2007).

The party moving for summary judgment bears the initial burden of demonstrating to the Court "by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). A court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-150 (2000) (discussing standard for granting judgment as a matter of law under Fed. R. Civ. P. 50, which mirrors the standard for granting summary judgment under Rule 56); *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000). The Court considers the entire record, but must

7

disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151; *Hinson*, 231 F.3d at 827.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there is a material issue of fact that precludes summary judgment. *Clark*, 929 F.2d at 608. The non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts, through affidavits or other forms of evidence provided for by the rules. *Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970).

"[T]he inquiry is whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252-52.  A genuine issue of material fact exists where there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).  As the Supreme Court has stated, if the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Electric Industry Co. v. Zenith Ration Corp.*, 475 U.S. 574, 587 (1986).

## MALICIOUS PROSECUTION

Under Florida law, a plaintiff must establish each of six elements to support a claim of malicious prosecution:  (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present

8

defendant; and, (6) the plaintiff suffered damages as a result of the original proceeding. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (internal citations omitted); *Burns v. GCC Beverages, Inc.*, 502 So.2d 1217, 1218 (Fla.1986). "The failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla. 1994).

Plaintiff implicitly asserts the filing of the charging affidavit, wherein he is accused of official misconduct, with the State Attorney's Office for the Seventh Judicial Circuit constituted the initiation of an original judicial proceeding.  (*See* Amended Complaint at ¶ 26).  Plaintiff unequivocally states  Defendants Getchell and Griffith were the legal cause of a criminal case  for official misconduct that was brought against Plaintiff in March 2004. (Amended Complaint at ¶¶ 26, 41-43).  Plaintiff alleges the State Attorney dismissed the criminal charge filed by Defendants against Plaintiff on July 29, 2004, and the dismissal constituted a bona fide termination of the original proceeding in favor of Plaintiff.  (Amended Complaint at ¶ 28).  Plaintiff claims there was a complete absence of probable cause for the case, which was brought with legal malice and willful and wanton disregard of Plaintiff's rights (Amended Complaint at ¶¶ 44-51).  Thus, Plaintiff declares he has suffered damages, including loss of income, loss of fringe benefits, loss of reputation and career, humiliation, embarrassment, mental and emotional distress and anguish, loss of self-esteem and harm to personal and business reputation.  (Amended Complaint at ¶ 52).

In the present action, it is questionable whether Plaintiff can establish the first element for malicious prosecution.  Some question may exist as to whether Plaintiff has established a bona fide termination of the original proceeding in his favor.  However, because Plaintiff has failed to establish the fourth and fifth elements, Defendants are

entitled to summary judgment.

The commencement or continuation of an original judicial proceeding against Plaintiff is the first element that must be established before a malicious prosecution claim will stand under Florida common law.  In this case it is undisputed that Defendant Griffith filed a charging affidavit with the State Attorney's Office for the Seventh Judicial Circuit Court.  The charging affidavit is a sworn statement setting forth the facts a police officer, or private citizen with direct knowledge, believes establish probable cause that a crime has been committed.  (Strickler Dep. at 18-21, 36-37).  In this case, Griffith stated there was probable cause to believe Plaintiff Sharp had falsified information in his police report, PPD# 03-05904, and used that false information to justify listing Lynn Hoffman as a criminal suspect in the case.  (*See* Charging Affidavit, Doc. #66-2 at 4).[5]  If proven, the actions of Plaintiff Sharp would constitute official misconduct in violation of Florida Statutes § 838.022(1)(a).[6]  The charging affidavit and the "no information" document were filed on July 29, 2004.  (Willis Aff. at ¶ 4).  The no information document lets the Clerk's office know that it  may close the file because the State Attorney will not prosecute the matter.  *Id.*

Plaintiff posits that the action of filing a charging affidavit, the assignment of a case number and a judge to the case, represent the initiation of an original judicial proceeding for purposes of a  malicious prosecution action.  (Doc. #71, Plaintiff's Response,  pp.2-4).

_____

[5]Doc. #66-2 is the affidavit of Gail Willis, Criminal Division Supervisor, Putnam Count Clerk's Office in the Seventh Judicial Circuit.  The charging affidavit and the entire contents of the file in criminal case number 04-1375-CF-53 are attached thereto.

[6]Fla. Stat. § 838.022 (2003) states in relevant part:  "It is unlawful for a public servant, with corrupt intent to obtain a benefit for any person or to cause harm to another, to [f]alsify, or cause another person to falsify, any official record or official document. . . ." Fla. Stat. § 838.022 (1)(a).

10

Plaintiff also points out, correctly the Court notes, that actual prosecution is not an element of the malicious prosecution common law tort. *Id.*

Defendants counter that "no judicial criminal proceeding ever commenced against [P]laintiff" as the no information document and the charging affidavit were filed together with the Clerk of Court. (Motion for Partial Summary Judgment, pp. 2, 11-13). Defendants theorize that because no information or indictment were ever issued against Plaintiff Sharp for the offense of official misconduct or for any other charge, and because Sharp was never arrested and never required to appear in court, no judicial proceeding was actually initiated. Defendants point out that Fla. Stat. § 775.15(4)(b) provides that "prosecution on a charge on which the defendant has not previously been arrested or served with a summons is commenced when either an indictment or information is filed. . . ." (Motion for Partial Summary Judgment at 16). Assistant State Attorney Strickler testified that the filing of an information formally charges an individual who has not been previously arrested. (Strickler Dep. at 18-19). Defendants assert that because Plaintiff Sharp was not formally charged or prosecuted with the claimed offense, no judicial proceeding was ever commenced.

The Court finds both arguments have some merit. The parties have not presented, and the Court has not found, any legal authority directly on point for this issue. On the one hand, the assignment of a case number by a clerk of court and assignment of a judge to that case would arguably constitute the commencement of a judicial proceeding. Moreover, at some point the complaint becomes a public record, thus indicating the existence of a case. On the other hand, if no formal charge is filed because the State Attorney declines to prosecute, a plea is not entered and no case proceeds. Because an actual prosecution of a crime is not an element of the common law tort of malicious

11

prosecution in Florida, there is some logic to Plaintiff's argument that the first element is satisfied with the assignment of a case number and judge to the case by the Putnam County Clerk's Office in the Seventh Judicial Circuit.  However, since Plaintiff's malicious prosecution claim clearly fails on other grounds, the Court determines it is unnecessary to issue an initial ruling on a matter of state law and therefore declines to make a finding on this matter.

Under the third element for malicious prosecution Plaintiff must show that the termination of the original proceeding constituted a bona fide termination of that proceeding in his favor.  A Florida district court of appeal has held the essential element of a bona fide termination of the criminal prosecution in favor of the person bringing the malicious prosecution action has been satisfied if there has been an adjudication on the merits favorable to him or if there is a good faith nolle prosequi or declination to prosecute,  *Gatto v. Publix Supermarket, Inc.*, 387 So.2d 377, 380-81 (Fla. 3d DCA 1980) (internal citations omitted).  In *Gatto*, the plaintiff had been arrested for shoplifting some paperback books on the basis of a sworn complaint by the Publix store manager and executed by the arresting officer.  *Id.* at 379-80.  Similar to the instant action, the State Attorney in *Gatto* filed an announcement of no information and Gatto sued for malicious prosecution.  *Id.* at 380.  In the Sharp matter, no arrest occurred and the State Attorney declined to prosecute the criminal activity alleged in the charging affidavit with the filing of an Announcement of No Information.  (*See* Willis Aff. Attachments).    The Court agrees with the Florida Third District Court of Appeal, that a declination to prosecution establishes a bona fide termination in favor of the plaintiff suing for malicious prosecution.

Although Plaintiff properly alleged there was a complete absence of probable cause

12

for Defendants Getchell and Griffith to file the criminal complaint[7] against Plaintiff (*see* Amended Complaint at ¶ 44), the undisputed facts reveal probable cause to believe a crime had been committed existed at the time the complaint was filed on March 30, 2004.

When the evidence is in dispute, the want of probable cause is a question of fact for the jury. *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004). In this case, however, it is the interpretation of the evidence concerning the malicious prosecution claim that is in dispute, not the actual evidence. Probable cause is purely a matter of law for the court where the material facts are, as here, undisputed. *Martinez v. Brink's Inc.*, No. 04-14609, 2006 WL 551239 at *3 (11th Cir. Mar. 8, 2006) (citing *Endacott v. Int'l Hospitality Inc.*, 910 So.2d 915, 922 (Fla. 3d DCA 2005) and *Beizer v. Judge*, 743 So.2d 134, 137 (Fla. 4th DCA 1999).[8]

It is undisputed Hoffman and Plaintiff Sharp have a long, contentious history of controversies with each other, which have escalated into formal complaints and litigation at times. (Sharp Aff. at ¶¶ 10-18). It is undisputed that Russell Kohuth and John Key, Plaintiff's present counsel of record, held a meeting with city officials on October 24, 2003 to accuse Lynn Hoffman of computer crimes against them and to advise they would not sue the City of Palatka if Hoffman was fired.[9] (Bush Aff. at ¶ 9). It is undisputed that Kohuth

---

[7]Throughout this Order, the terms "charging affidavit," "Form 798," and "criminal complaint against Plaintiff" have been used interchangeably. All references are to the same document, attached to the affidavit of Gail Willis (Doc. #66-2).

[8]*Martinez v. Brink's Inc.*, No. 04-14609, 2006 WL 551239 at *3 (11th Cir. Mar. 8, 2006) is cited for its persuasive authority in accordance with the Eleventh Circuit Rules. 11th Cir. R. 36-2.

[9]City Manager Bush noted Lynn Hoffman was an independent contractor to the City of Palatka and not an employee. (Bush Aff. at ¶ 9).

and Key made statements during the October 24th meeting indicating personal knowledge that Hoffman was under investigation by the PPD and FDLE.  It is further undisputed that the referenced criminal investigation was ongoing and the involvement of any particular individual was not public knowledge.  Plaintiff Sharp's ties to Kohuth and Key were known to Defendants Getchell and Griffith.  It has not been disputed that Plaintiff Sharp placed a phone call on his PPD issued cell phone at 11:10 a.m. on October 23, 2003, to a telephone number listed to R.T. Kohuth, believed to be Russell Kohuth.  (Second Griffith Aff., Exh. C).  The time of the call coincides closely with the Kohuth/Key meeting.  Plaintiff Sharp testified he called Russell Kohuth to make a lunch date with him (Sharp Dep. at 153).  No one disputes that Plaintiff Sharp filed a supplemental police report on October 25, 2003 in which he named Lynn Hoffman as a suspect of a computer crime and in which he stated he had traced the originating IP address of a private email between Russell Kohuth and John Key back to the St. Johns River Community College public library computers.  (Second Griffith Aff. at Exhs. D-F).  In the supplemental report, Sharp did not detail how he traced the IP address to the St. Johns River Community College (SJRCC) library.  The general counsel for St. Johns River Community College, Ms. Melissa Miller, Esq., advised Assistant Chief Griffith that the IP address Sharp claimed to trace (169.139.172.2) would not be traceable to any particular computer at the college.  (Miller Aff. at ¶ 3).  Griffith recalled being advised the referenced IP address was to the firewall at the college and it would be impossible to trace the IP address to a specific location such as the library without directly contacting the IT people at the college and obtaining their logs.  (Second Griffith Aff. at ¶ 13; *see also*

Miller Aff. at ¶ 3).  There is no evidence in the record that Sharp made such contact.[10] There is, however, evidence in the record that the firewall logs in the IT department at St. Johns River Community College are deleted frequently and had been deleted at least prior to December 3, 2003.  (*See* Miller Aff. Attachments).  A reasonably cautious person would be suspicious of possible wrongdoing by Plaintiff Sharp as of March 30, 2007, when the charging affidavit was filed with the State Attorney's Office.

The standard for probable cause to arrest an individual is met when the facts and circumstances within the officer's knowledge would cause a reasonably prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.  *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (internal citations omitted); *Fernander v. Bonis*, 947 So.2d 584, 588 (Fla. 4th DCA 2007). Florida courts have found probable cause exists when circumstances are sufficient to cause a reasonably cautious person to believe that the accused is guilty of the charged offense.  *Fla. Game & Freshwater Fish Comm'n v. Dockery*, 676 So.2d 471m 473 (Fla. 1st DCA 1996) (defining probable cause in the context of an arrest); *Fernander v. Bonis*, 947 So.2d at 588 (discussing probable cause in the context of an arrest warrant where the arresting officer was accused of malicious prosecution and false imprisonment, among other allegations).  Although probable cause requires more than suspicion, it does not

---

[10]There is a written statement within the record wherein Plaintiff Sharp states he contacted Hayes Computer Services, a business that reportedly provides networking for the Florida Information Resource Network and a person at Hayes told him the IP address belonged to the SJRCC library.  (Second Griffith Aff., Exh. H, Documentation for the 7th Judicial Circuit by Alex Sharp, dated April 13, 2004, pp. 14, 16).  However, other evidence in the record disputes that Hayes personnel have access to make such a determination. (Second Griffith Aff. at ¶ 13, Exh. H at p. D3510).

require convincing proof. *Lee v. Ferraro*, 284 F.3d 1188, 1195 11th Cir. 2002).

On the facts herein noted, reasonable cause existed for the initial internal affairs investigation (IA 1106), which revealed the factual basis for the subsequent internal affairs investigations (IA 1107 & IA 1108). Utilizing the guidance found in *Wood* and *Fernander*, the Court finds the requisite probable cause existed for filing of the charging affidavit to allege Plaintiff Sharp had been involved in the commission of a crime under Florida law. Thus, Plaintiff's malicious prosecution claim fails as to the element of absence of probable cause.

Further, following the analysis stated in *Wood v. Kessler*, 323 F.3d at 884, the Court finds the facts showing probable cause refute Plaintiff's attempt to establish Defendants acted with malice. As stated in *Wood*, "[t]he existence of probable cause, and in particular the facts showing that probable cause, contradict any suggestion of malicious intent or bad faith." *Id*. In this case, the malicious prosecution claim fails as to the fifth element; Plaintiff has not established there was malice on the part of the present Defendants.

## QUALIFIED IMMUNITY

Irrespective of whether Plaintiff Sharp could establish a prima facie case for malicious prosecution, the Court finds Defendants Getchell and Griffith are entitled to qualified immunity under both common law and Fla. Stat. § 768.28 (9)(a) (2006). As Defendants correctly note, Florida courts have looked to the federal bench for direction when ruling on qualified immunity issues. *Lemay v. Kondrk*, 923 So.2d 1188, 1191 (Fla. 5th DCA 2006); *see also Fernander v. Bonis*, 947 So.2d 584, 588-89 (Fla. 4th DCA 2007).

Both Defendant Getchell and Defendant Griffith have claimed qualified immunity from the allegations in Plaintiff's amended complaint. Defendants aver that as city

employees they are not liable for any tort claim unless they acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a) (2006).

Plaintiff has asserted the acts of Defendants Getchell and Griffith were done with legal malice, and with willful and wanton disregard of Plaintiff's rights.  (Amended Complaint at ¶ 46).  Plaintiff alternatively pleads that Getchell and Griffith's conduct in filing an unsubstantiated criminal charge was so reckless or wanting in care that it constituted a conscious disregard or indifference for the rights of Plaintiff.  (Amended Complaint at ¶ 49).  These allegations hinge on the asserted lack of probable cause for the filing of the charging affidavit against Plaintiff.

To be entitled to qualified immunity from suit against his or her person, an arresting officer is only required to show *arguable* probable cause.  *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (emphasis in the original).  If the probable cause to support an arrest warrant is challenged in a suit against the officer who obtained the warrant, then that officer is entitled to qualified immunity if the warrant is supported by arguable, rather than actual, probable cause.  *Brown v. Abercrombie*, 151 Fed.Appx. 892, 893 (11th Cir. 2005).[11]  In this case, the Defendants seeking qualified immunity are accused of malicious prosecution on the basis of a charging affidavit filed with the State Attorney's Office, but which was not used to arrest Plaintiff or to prosecute Plaintiff in any fashion.  Thus, Defendants Getchell and Griffith need show only that the charging affidavit was supported by arguable probable cause.   "Arguable probable cause exists where reasonable officers in the same

---

[11]*Brown v. Abercrombie*, 151 Fed. Appx. 892 (11th Cir. Sept. 30, 2005) is cited for its persuasive authority in accordance with the Eleventh Circuit Rules.  11th Cir. R. 36-2.

circumstances and possessing the same knowledge as the [Defendants] could have believed that probable cause existed to arrest." *Lee v. Ferraro*, 284 F.3d at 1195 (internal citations omitted).  In determining whether arguable probable cause exists, the Court must "apply an objective standard, asking whether the officer's actions are objectively reasonable ... regardless of the officer's underlying intent or motivation."   *Id.* (internal quotations/citations omitted).

As noted earlier, the Court finds actual probable cause existed for the filing of the charging affidavit with the State Attorney's Office.  Under the broader standard of arguable probable cause, Defendants Getchell and Griffith are clearly entitled to qualified immunity from the tort of malicious prosecution.   The actions of Defendants Getchell and Griffith in meeting with a member of the State Attorney's Office and ultimately filing the charging affidavit were objectively reasonable on the facts of this case.  *See Lee v. Ferraro*, 284 F.3d at 1195.   Thus, at the least, arguable probable cause existed for the filing of the charging affidavit.

Under both federal and Florida law, actual probable cause is considered based on the totality of the circumstances and is judged by the facts and legal state of affairs that existed at the time of the alleged violation of Plaintiffs rights. *Lee v. Ferraro*, 284 F.3d at 1195; *Fernander v. Bonis*, 947 So.2d at 588.  Here, Defendants Getchell and Griffith had the discretion to investigate possible violations of police procedure and to investigate possible violations of law committed by PPD officers.  *See* Palatka Mun. Code part II, ch. 42, art. II, § 42-31 (2006); *see also,* Palatka Police Dept. Gen. Orders, section 26.2.2, pp 5-6 (Doc. #50, Exh. 12).  Plaintiff Sharp was such an officer.  Defendants were cautious in their investigations, as evidenced by delaying any internal affairs investigation until

18

resolution of the actual criminal complaint of Johnson and after the posted lieutenant's position closed.  (Getchell Att. at ¶ 25).   Defendants conduct in conferring with the State Attorney's Office prior to filing a charging affidavit further illustrates the degree of restraint and circumspection Defendants exercised before filing the charging affidavit.   Police officers are not required to consult with the State Attorney's Office before filing a Form 798, charging affidavit.  (*See* Third Griffith Aff. [Doc. #66-4], generally and at ¶ 6 specifically). The evidence of possible wrong-doing on the part of Sharp led to the internal affairs investigations and established probable cause for the resulting charging affidavit.   On the undisputed facts, the actions of Defendants Getchell and Griffith belie Plaintiff's efforts to establish bad faith or malicious purpose in filing of the charging affidavit with the State Attorney's Office.

In interpreting § 768.28, Fla. Stat.,  the Florida supreme court has concluded that the intent behind amendments made to the statute in 1980 was to extend the veil of sovereign immunity to specified governmental employees when they are acting within the scope of employment, with the employing agency alone remaining liable up to the limits provided by statute. *McGhee v. Volusia County*, 679 So.2d 729, 733 (Fla.1996).  The court held that the veil is lifted only where the employee's act fell outside the scope of employment. *Id.*

Here, Defendants have established, and Plaintiff has failed to refute, that the internal affairs investigations and the filing of the Form 798 charging affidavit with the State Attorney were conducted within the discretionary functions of their jobs.  Probable cause existed for the filing of the charging affidavit.  Defendants Getchell and Griffith are therefore entitled to qualified immunity from Plaintiff's claim of malicious prosecution.

19

## **CONCLUSION**

Based on the preceding analysis, Defendants' Motion for Partial Summary Judgment

on Count II of Amended Complaint with Supportive Memorandum of Law (Doc. #67) is

**GRANTED**.  The Clerk of the Court shall enter judgment accordingly.

**DONE AND ORDERED** at Jacksonville, Florida this 20ᵗʰ  day of December, 2007.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
        and *pro se* parties, if any