**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ALEXANDER MILLIGAN SHARP, IV,

    Plaintiff,

vs.                                                            CASE NO. 3:06-cv-200-J-TEM

CITY OF PALATKA,

    Defendant.
_____

**O R D E R**

Defendant has filed a Memorandum in Opposition to Plaintiff's Motion in Limine (Doc. # 95) which the Court will construe, in part, as a motion for reconsideration.

Specifically, Defendant argues that the Court's reliance on *Burlington Northern & Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405 (2006) is misplaced. In *Burlington,* the Supreme Court found that the anti-retaliation provision in Title VII[1] prohibits a broader range of discriminatory actions than the unlawful employment practice section.[2]

The Court found that the standards *Burlington* set for anti-retaliation cases are also applicable to First Amendment free speech claims under Title 42, U.S.C. § 1983. Public employees stating a claim for retaliation in violation of the First Amendment must show the employer retaliated against them because of speech on a matter of public concern. *McCabe v. Sharrett*, 12 F.3d 1558, 1564 n. 3 (11th Cir. 1994).

A public employer retaliates when it takes an adverse employment action that is likely to chill the exercise of constitutionality protected speech. *Goffer v. Marbury*, 956 F.2d

---

[1] The Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3(a).

[2] 42 U.S.C. § 2000e-2(a).

1045, 1049 n. 1 (11th Cir. 1992).  To be considered an adverse employment action, the complained-of action must involve an important condition of employment.  *Bickel v. Burkhart*, 632 F.2d 1251, 1255 n. 6 (5th Cir. Unit A 1980).[3]

In *Stavropoulos v. Firestone*, 361 F.3d 610, 619 (11th Cir. 2004) (which included both Title VII and First Amendment claims), the court noted it had not "explicitly equated" the adverse employment action required in a § 1983 case with that in a Title VII case, but "we regularly draw cases applying this rule to inform our analysis of Title VII retaliation claims."

The *Firestone* court held that to satisfy the "principles of justiciability, an employee complaining of First Amendment retaliation must show more than her subjective belief that the employer's action was likely to chill her speech: she must show that the action had an impact on an important aspect of her employment.  This too is consonant with Title VII." *Id.*  The Court concluded that the district court had committed no error by applying Title VII standards of what is an adverse employment action to the First Amendment claim.  *Id.*

In *McCabe,* 12 F.3d at 1563, the court had stated that "adverse employment action" is "broadly defined and as a matter of law includes not only discharges, refusals to hire, refusals to promote, and reprimands."  In *Firestone*, 361 F.3d at 620, the court stated the *McCabe* list could be expanded "so long as the action impacts an important condition of employment."  However, in *Firestone,* the court found that actions such as sending a memorandum to the employee (an assistant professor) criticizing her for filing a report to the dean's office concerning a person's candidacy for a position and encouraging faculty members to say negative things about her to a third-year review committee, were not

---

[3] Decisions of the Fifth Circuit rendered on or before September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

sufficient. *Id.* at 620. "Taken together or separately, Firestone's acts fail to rise to the level of an adverse employment action because they had no impact on an important condition of Stavropoulos's job, such as her salary, title, position, or job duties." *Id.*

Even prior to the Supreme Court's decision in *Burlington,* which clarified a split in circuit court interpretation of adverse employment actions in a Title VII retaliation case, the Eleventh Circuit had adopted the position that Title VII protection in such cases "extends to adverse actions which fall short of ultimate employment decisions." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). In *Wideman*, the court found it was necessary to avoid stifling "employee's willingness to file charges of discrimination." *Id.* In that case, the court found each of a series of incidents deserved a trial on the merits. The incidents included: being listed as no show on a day she was scheduled to have off, and being required to work when she went in the store to shop; written reprimands, followed by a one-day suspension; reporting to work and being told she wasn't scheduled, followed by an assistant manager making a threat to shoot her; soliciting adverse statements about her from other employees, and delaying in authorizing medical treatment for an allergic reaction.

Later, the Eleventh Circuit in *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001), declined to find an adverse action against a police officer based on two corrective job performance memos placed in his personnel file and two instances in which he was temporarily removed as the designated officer-in-charge (although he later served in that position). The court recognized that the officer may have felt some "blow to his professional image," but did not want to open the door to having courts "sit as a super-personnel department that reexamines an entity's business decisions." *Id.* at 1244 (internal

3

quotations and citations omitted). The court found a lack of prestige without tangible harm affecting the employee's permanent job title or classification was insufficient to be an adverse employment action. *Id.* at 1245. *Davis*, however, was only brought under the unfair employment practice section of Title VII, not the retaliation section.

The Court, in treating *Burlington* as applicable to a First Amendment § 1983 case, considered several factors. First, the unfair employment provision of Title VII is intended to prevent injury to individuals based on who they are – their status (minorities, gender, etc.) – where the anti-retaliation provision seeks to prevent harm to individuals based on their conduct. *Burlington,* 126 S.Ct. at 2412. In our case, the conduct alleged was speech. Secondly, the Supreme Court noted that the purpose of the anti-retaliation provision was to ensure that employees are completely free from coercion against reporting unlawful practices. *Id.* at 2414. First Amendment rights, such as freedom of speech, are considered fundamental rights. *McCabe,* 12 F.3d at 1563. Although not totally parallel, both § 1983 and Title VII anti-retaliation provisions were enacted to protect rights available to those covered by the provisions.

In the Seventh Circuit, the court has held that a § 1983 First Amendment case does not require an adverse action with the meaning of Title VII. Rather, the court found that any deprivation "that is likely to deter the exercise of free speech" is actionable. *Spiegla v. Hull*, 371 F.3d 928, 941 (7th Cir. 2004).

That said, the Court is also aware that the Eleventh Circuit has found that a police department's interest in regulating their employees' conduct tends to be heavy and compelling. *Waters v. Chaffin*, 684 F.2d 833, 836 (11th Cir. 1982); *McCabe*, 12 F.3d at 1558. As implicit from *Davis*, the Court is not inclined to attempt to micro-manage the

activities of a police department. In *Burlington,* the Supreme Court noted significant harm should be separated from trivial harm. The Court indicated it did not consider Title VII's anti-retaliation section to create a "general civility code for the American workplace." *Burlington*, 126 S.Ct. at 2415.

Defendant suggests that the Court should treat some of Plaintiff's grievances under the more strict provisions of the Title VII substantive unfair employment practices section, and only use the more relaxed anti-retaliation standards for acts that occurred after March 4, 2004, when Plaintiff submitted his grievance to the city manager. Another possibility would be to use the date of Plaintiff's complaint to the police chief that he believed he was being treated differently because of his running for sheriff.

The difficulty with either of those views is that they seek to treat the retaliation as being based on Plaintiff's complaints, rather than his right to freedom of speech under § 1983. The Court can find no basis for doing that in the case law. Plaintiff may have a difficult burden in showing by a preponderance of the evidence that actions taken against him were motivated by his free speech rather than some other police department interest, but the Court cannot convert the case to a Title VII unfair employment action case.

However, based on the review the Court has undertaken of the case law, the Court will re-examine briefly the Plaintiff's claims:

(1) Telling Plaintiff that he would be forced to take a leave of absence if he persisted in seeking political office. Although the police department later retreated from that position, Plaintiff should have the opportunity to prove the alleged statement was made and motivated to deter his First Amendment right. Defendant may either disprove the claim or

show that it was made based on misunderstanding rather than motivated by a retaliatory motive.

(2) Denial of a promotion opportunity. *McCabe* specified such a claim is within the purview of § 1983. 12 F.3d at 1563.

(3) Denying Plaintiff previously scheduled training opportunities. The Court finds that allegation is within the purview of § 1983, as it could affect future promotions.

(4) Denying direct contact with the police chief. Although arguably trivial, the Palatka police department only has approximately 20 employees. Plaintiff claims he had unlimited access to the chief until a certain point. Proof that the chief merely could not take one call would not be sufficient, but Plaintiff claims he was the only employee denied access. Thus, the Court will allow Plaintiff to present this claim as possible retaliatory action.

(5) Having Plaintiff's name left off press releases. Upon reconsideration, the Court concludes this is a trivial matter under *Burlington*. At most, the "harm" would be to his prestige. Although Plaintiff might want publicity while running for office, there was no obligation of the police department to support him in that endeavor, and indeed, the department may have desired to avoid taking an action seeming to support one candidate over another.

(6) Demotion to record clerk. Although Defendant argues there was no loss of salary, there was a loss of police vehicle, badge and firearm. The Court finds that the transfer arguably is an adverse personnel action. *Spiegla,* 371 F.3d at 941.

(7) Falsifying evidence and falsely accusing Plaintiff of crimes and misconduct. Particularly because there were press releases announcing investigations against Plaintiff,

a reasonably objective employee would have found those actions adverse and might dissuade such a person from any free speech activity in which the employee is engaged.

(8) Engaging in acts of character assassination.  Although somewhat vague, the Court is aware that in *Wideman*, 141 F.3d at 1456, the Eleventh Circuit allowed an issue of soliciting complaints about an employee to be a jury issue.  However, in *Firestone,* 361 F.3d at 620, solicitation of adverse comments to a review committee was not considered sufficiently adverse as it did not affect conditions of employment.  Although a close issue, because the issue may tie into the acts alleged in the false accusation complaint, the Court will allow Plaintiff to attempt to prove the allegation.

Thus, the Court has reconsidered all of Plaintiff's claims of retaliatory acts based upon Defendant's construed motion.  It will grant summary judgment to Defendant on the issue of leaving Plaintiff's name off press releases.  Although there is no direct post-*Burlington* authority specifying that § 1983 First Amendment cases should be judged by the same standards of the Title VII anti-retaliation provision, under *Firestone*, which remains as precedent for this Court, the Eleventh Circuit has recognized a close relationship between the standards of the two types of cases.  Therefore, the Court finds a *Burlington* type analysis is appropriate under the facts of this case.

Defendant has cited the case of *Wallace v. Georgia Dept. of Transp.*, 212 Fed. Appx. 799 (11th Cir. 2006); however, that case rejected application of *Burlington* to a Title VII unfair labor act claim of disparate treatment, a substantive discrimination claim.  The *Wallace* court did apply a *Burlington* type analysis to the separate Title VII retaliation claim, rejecting the claim because a written reprimand did not occur until seven months after an EEOC complaint and no requisite causal connection was shown.  *Id.* at 802.  Defendant

also cites *Crawford v. Carroll*, Civ. Action No. 1:04-cv-0089-JOF, 2007 WL 757666 (N.D. Ga. Mar. 8, 2007). The *Crawford* court applied the *Burlington* standards in its analysis of a Title VII disparate treatment and retaliation case in deciding that a four-month delay in receiving a merit salary increase was not an adverse employment action because the plaintiff did receive the increase retroactive to the time she would have become entitled to it and she never was in doubt of losing her job. *Id.* at *7. The *Crawford* court determined that the plaintiff's circumstance was more analogous to the plaintiff in *Stavropoulos v. Firestone*, 361 F.3d 610 (11th Cir.2004), and that it was unnecessary to find *Burlington* overruled *Stavropoulos*[4] as the cases were distinguishable and did not conflict with the Eleventh Circuit precedent set forth in *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001). *Id.*

For the above reasons, summary judgment shall be granted Defendant on the press release claim. The Court's ruling denying summary judgment on the named claims is amended to include the above analysis, but is otherwise affirmed.

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of January, 2008.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to all counsel of record

---

[4] Whereas the Northern District of Georgia refers to this case in the short form of *Stavropoulos*, throughout this Order the Court has referred to the same case under the short form of the *Firestone* case.